## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

BRIAN SPELLS,

Plaintiff,

v.

PHYSICIAN AND TACTICAL
HEALTHCARE SERVICES, LLC,

Defendant.

Civ. A. No.: 20-cv-6213-NLH-AMD

---

### DEFENDANT PHYSICIAN AND TACTICAL HEALTHCARE SERVICES, LLC'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

<br>

**DILWORTH PAXSON LLP**
Nicholas M. Donzuso, Esquire
Benjamin S. Teris, Esquire
457 Haddonfield Road, Suite 700
Cherry Hill, New Jersey, 08002
(856) 675-1940
(856) 663-8855 (facsimile)
ndonzuso@dilworthlaw.com
bteris@dilworthlaw.com

*Attorneys for Defendant Physician and Tactical
Healthcare Services, LLC*

122154888_4

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**................................................................................1

**I. FACTS**........................................................................................3

**II. LEGAL ARGUMENT**...................................................................3

   **A. Standard of Review for Summary Judgment** ..............................3

   **B. Summary Judgment Should be Granted in Favor of PATHS Because PATHS Reasonably Relied on DOL Regulations and Guidance in April 2020 to Determine Its Employees, Including Plaintiff, Were Exempt From The FFCRA Paid Leave Entitlements Under the Health Care Provider Exemption**...............................................4

     1. *The FFCRA*..........................................................................4

     2. *The April 1, 2020 DOL regulations and guidance broadly defined the health care provider exemption to include employees of employers who merely contract with health care providers such as PATHS*...................5

     3. *The SDNY holds that the DOL regulation regarding the health care provider exemption is invalid* .................................................8

     4. *PATHS relied in good faith on the DOL's broad regulations and guidance on the health care provider exemption to determine its employees are exempt* ...........................................................9

       a. Element 1: PATHS relied on the DOL's operative regulations and guidance on the health care provider exemption when it determined that Plaintiff was exempt from the EPSLA in April 2020......................11

       b. Element 2:  PATHS acted in conformity with the DOL's operative regulations and guidance on the health care provider exemption in April 2020…………....................................................................14

       c. Element 3:  PATHS acted in good faith when it determined its employees, including Plaintiff, were exempt from EPSL/FFCRA leave because they fit the criteria for the health care provider exemption in April 2020…………...................................................................16

   **C. PATHS is Entitled to Summary Judgment on Plaintiff's FFCRA Retaliation Claim Because He Cannot Establish a Causal Link Between any Protected Activity and any Adverse Employment Action** ..............................................................................18

     1. *Plaintiff did not engage in protected activity*..............................19

*2. Even if Plaintiff engaged in protected activity under the FFCRA, such activity is not causally connected to any adverse employment action*..........21

    a. <u>Remote Work</u>...................................................................................23

    b. <u>Termination</u>..................................................................25

    c. <u>Rehire</u>............................................................................27

*3. Even if Plaintiff were able to establish a prima facie case of retaliation, PATHS had legitimate non-retaliatory reasons for the decisions it made and Plaintiff will be unable to establish pretext*............29

**III. CONCLUSION**...........................................................................31

# TABLE OF AUTHORITIES

**<u>CASES</u>**[1]                                                                                          **<u>PAGES</u>**

<u>Anderson v. Liberty Lobby Inc.,</u>
477 U.S. 242, 248 (1986)…………...............................................................3

<u>BH Media Grp., Inc.,</u>
419 F. Supp. 3d 831, 850 (D.N.J. 2019)...................................................19

<u>Beltran v. 2 Deer Park Drive Operations LLC,</u>
2021 WL 794745 (D.N.J. Feb. 28, 2021)…………………………………….7

<u>Brown v. Jewell,</u>
134 F. Supp. 3d 170, 181 (D.D.C. 2015)................................................23

<u>Celotex Corp. v. Catrett,</u>
477 U.S. 317, 324 (1986)…………………………….…………………3, 4

<u>Colombe v. SGN, Inc.,</u>
2021 WL 1198304, at *5 (E.D. Ky. Mar. 29, 2021)................................21

<u>Cunningham v. Heraeus Inc.,</u>
2020 WL 5253565, at *7 (D.N.J. Sept. 3, 2020)....................................19

<u>EEOC v. Home Ins. Co.,</u>
672 F.2d 252, 263 (2nd Cir. 1982)........................................................10

<u>Encino Motors, LLC v. Navarro,</u>
138 S. Ct. 1134, 1147, 200 L.Ed. 2d 433, 447 (2018)...........................10

<u>Escanio v. United Parcel Serv.,</u>
538 F. App' x 195, 200 (3d Cir. 2013)............................................27, 29

<u>Frank v. McQuigg,</u>
950 F.2d 590 (9th Cir. 1991)…………   ……………………………10, 11, 12, 13

<u>Fuentes v. Perskie,</u>
32 F.3d 759, 765 (3d Cir. 1994) ......................................................29, 30

<u>Goins v. Newark Hous. Auth.,</u>
2019 WL 1417850, at *15 (D.N.J. Mar. 29, 2019) ................................22

---

[1] Copies of the cited unpublished decisions are included in alphabetical order with this Motion as Exhibit O.

122217505_1

Harris v. Clean Harbors Env't Servs., Inc.,
2019 WL 5446299, at *13 (D.N.J. Oct. 24, 2019)...............…..19, 24, 25, 27, 29


Henchy v. City of Absecon,
148 F. Supp. 2d 435, 442 (D.N.J. 2001)....................................................10

Hill v. Underwood Mem'l Hosp.,
365 F. Supp. 2d 602, 611 (D.N.J. 2005)....................................................20

Horizon Blue Cross Blue Shield of New Jersey,
No. CIV.A. 12-2981, 2015 WL 4603647, at *5 (D.N.J. July 30, 2015),
aff'd, 674 F. App.'x 174 (3d Cir. 2017).....................................................23

Jones v. United Parcel Serv.,
214 F.3d 402, 407 (3d Cir. 2000)....................................................................3

Katchmar v. SunGard Data Sys.,
109 F.3d 173, 177 (3d Cir. 1997) ............................................................22

Kenney v. Wigton-Abbot Corp.,
80 F. Supp. 489, 495-96 (D.N.J. 1948) .............................................13, 16

Keubel v. Black and Decker (U.S.) Inc.,
No. 08-cv-6020, 2009 WL 1401694, at *10 (W.D.N.Y. May 18, 2009)....13, 14, 16

Marshall v. Baptist Hosp., Inc.,
668 F.2d 234, 237, 237-38 (6th Cir. 1981) .............................................10

McDonnell Douglas Corp. v. Douglas Corp. v. Green,
411 U.S. 792 (1973).................................................................................19

McGorrian v. E.M.S.A.,
85 F. App'x 1, 4 (3d Cir. 2003) ...............................................................28

Murray v. Beverage Distribution Ctr.,
533 F. Appx 98, 102-03 (3d Cir. 2013) ...................................................28

New York v. United States Department of Labor,
466 F.Supp. 3d 1 (S.D.N.Y. 2020)................................................................8

Newborn Bros. Co. v. Albion Eng'g Co.,
481 F. Supp. 3d 312, 323 (D.N.J. 2020) (Hillman) ...................................7

122217505_1

PBA Loc. 183 v. Cty. of Essex,
2019 WL 5168688, at *10 (D.N.J. Oct. 15, 2019) ...................................................23

Payne v. Woods Servs., Inc.,
2021 WL 603725 (E.D. Pa. Feb. 16, 2021)…………………………………………..7

Perera v. Att'y Gen. U.S.,
536 F. App'x 240, 242 (3d Cir. 2013) ....................................................................7

Preobrazhenskaya v. Mercy Hall Infirmary,
71 F. App' x 936, 939 (3d Cir. 2003) .................................................................24

Quinn v. NY State Elec & Gas Corp.,
621 F. Supp. 1086, 1089 (N.D.N,Y, 1985)………..………… 10, 12, 13, 14, 16, 17

Reid-Falcone v. Luzerne Cty. Cmty. Coll.,
2005 WL 1527792, at *8 (M.D. Pa. June 28, 2005)………………………………20

Robinson v. City of Pittsburgh,
120 F.3d 1286, 1301 (3d Cir. 1997)………………………………………………. 22

Shahin v. Delaware,
531 F.App'x 200, 203 (3d Cir. 2013) ......................................................................29

Syncsort Inc. v. Innovative Routines Int'l, Inc.,
2008 WL 1925304, at *5 (D.N.J. Apr. 30, 2008)......................................................7

Thomas v. Town of Hammonton,
351 F.3d 108, 114 (3d Cir. 2003) ............................................................................27

Vanderklok v. United States,
868 F.3d 189, 205 n.16 (3d Cir. 2017) ....................................................................7

Williams v. Ying Zhou,
2019 WL 1379876, at *4 (D.N.J. Mar. 27, 2019) ....................................................7

Yandrisevitz v. H.T. Lyons, Inc.,
2009 WL 20195139, at *10 (E.D. Pa. July 22, 2009) ............................................30

## **STATUTES**

Fed. R. Civ. P. 56(a)…………………………………………………………………….3

Fed. R. Evid. 201…………………………………………………………………….…..7

9 U.S.C. § 259 …………………………………………………………………….....9

29 U.S.C. §259(a)……………………………………………………………………11, 12

29 U.S.C. §259(a)(1)……………………………………………………..…21

29 U.S.C. §251…………………………………………………………...…10

## **REGULATIONS**

85 Fed. Reg. 19326 at §826.30(c)(Apr. 6, 2020)……………………..……6, 15

29 C.F.R. 790.15(a)…………………………………………………...…16

29 C.F.R. 790.17(b)…………………………………………………...…11

29 C.F.R .790.18(a)………………………………………………….. 11

29 C.F.R. 1625.13……………………………………………………12

## **WEBSITES**

https://www.dol.gov/newsroom/releases/whd/whd20200911-2 (press release on new regulations)…………………………………………………………...9

https://web.archive.org/web/20200911043441/https://www.dol.gov/agencies/whd/pandemic/ffcra-questions#56.............................................................9

https://web.archive.org/web/20200330142446/https://www.dol.gov/agencies/whd/pandemic/ffcra-questions...............................................................7

https://web.archive.org/web/20200402185858/https://www.dol.gov/agencies/whd/pandemic/ffcra-questions...............................................................8

Internet Archive Wayback Machine.......................................................7

## <u>OTHER AUTHORITIES</u>

Section 259 of the Portal-to-Portal Act ("Section 259")……....1, 2, 5, 9, 10, 11, 12, 13, 14, 16, 18

Families First Coronovirus Reponse Act ("FFCRA")…………1, 2, 4, 5, 6, 7, 8, 9, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 29, 30

Fair Labor Standards Act ("FLSA")…………………………..9. 10, 11, 12, 13, 19, 22, 23, 24,29

Emergency Paid Sick Leave Act ("EPSL")…………………... …11, 13, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 30

122217505_1

## I.      INTRODUCTION

Defendant Physician and Tactical Healthcare Services, LLC ("**PATHS**") should not be punished for relying on Department of Labor ("**DOL**") regulations and guidance to make decisions concerning a new law enacted during the height of COVID-19 pandemic. This is why Section 259 of the Portal-to-Portal Act ("**Section 259**") exists—to provide an absolute defense to employers who rely on DOL regulations and guidance to make decisions related to payment of wages, even if such regulations and guidance are later invalidated. It applies here to insulate PATHS from liability from Plaintiff Brian Spells' claims arising under the Families First Coronavirus Response Act ("**FFCRA**") through the Fair Labor Standards Act ("**FLSA**").

In short, on April 1, 2020, the DOL published regulations and guidance that broadly defined the "health care provider exemption" to the FFCRA's paid leave entitlement (emergency paid sick leave or "**EPSL**") to include anyone who works for an entity who contracts with an institution that provides medical services. On August 3, 2020, the United States District Court for the Southern District of New York ("**SDNY**") held that the health care provider exemption, as defined by the DOL regulations, was invalid. In response, on September 16, 2020, the DOL updated its regulations and guidance to narrow the health care provider exemption.

PATHS is, in short, a medical billing and consulting company that contracts with hospitals and other medical facilities to provide services. In April 2020, PATHS acted in good faith and reasonably relied on the operative DOL regulations and guidance to determine its employees, including Plaintiff, were exempt from EPSL/FFCRA leave under the health care provider exemption. After the DOL narrowed the exemption, PATHS relied on the new regulations and guidance to determine that its employees were no longer exempt and allowed them to take EPSL/FFCRA leave.

1

122154888_4

Plaintiff's claims against PATHS arise under the FFCRA through the FLSA for allegedly: (1) denying him EPSL that he requested while he was experiencing COVID-like symptoms; and (2) refusing to allow him to work remotely, terminating his employment, and refusing to rehire him in retaliation for requesting FFCRA leave. It is undisputed that Plaintiff's claims are based on events that occurred in April 2020—well before the SDNY decision and the DOL narrowed the health care provider exemption. Because Section 259 insulates PATHS from liability for relying on the operative April 2020 regulations and guidance to determine that Plaintiff was exempt from any leave entitlement under the FFCRA, Plaintiff's claims fail as a matter of law.

Moreover, PATHS is separately entitled to summary judgment on Plaintiff's retaliation claim. Notwithstanding the allegations in his Complaint, Plaintiff testified that he does not even believe PATHS retaliated against him for any leave request. Further, to assert an FFCRA retaliation claim, an employee must actually take EPSL—which Plaintiff clearly did not do. The undisputed facts also fail to establish a causal link between any FFCRA leave request and an adverse employment action. Indeed, Plaintiff cannot state when or to whom he requested FFCRA leave. Plaintiff's unpaid absence related to his alleged COVID-like symptoms began on April 1, 2020 and ended on April 24, 2020 when he was laid off. PATHS informed Plaintiff several times that he could return to work once he was medically cleared to do so, which belies any allegation that his separation from PATHS was causally related to an FFCRA leave request. Only after Plaintiff had already been out of work for about a month and submitted a letter from his physician indicating that he needed to work remotely for another month, did PATHS lay him off. Decisions on remote work were made in March, before the FFCRA took effect. PATHS did not offer remote work to newer employees, like Plaintiff, who required close supervision. Finally,

122154888_4

Plaintiff was not "rehired" into his position because he failed to contact the any member of management as directed following his separation. Notably, the volume of work in his former department has dropped so significantly that his former position is no longer available. No one has been hired to fill Plaintiff's former position since his separation. The undisputed material facts simply fail to support a cognizable retaliation claim.

Accordingly, PATHS's Motion for Summary Judgment should be granted and all of Plaintiff's claims should be dismissed, with prejudice.

## I.    FACTS

PATHS incorporates by reference its Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("**SUMF**") as if fully set forth herein.

## II.   LEGAL ARGUMENT

### A.  Standard of Review for Summary Judgment.

Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). If the moving party meets this initial burden, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). To successfully oppose entry of summary judgment, the non-moving party must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Where the non-moving party fails

to adduce sufficient evidence in connection with an essential element of the case for which it

bears the burden of proof, the moving party is entitled to entry of summary judgment in its favor.

*Id.* at 322-23.

  **B.  Summary Judgment Should be Granted in Favor of PATHS Because PATHS
Reasonably Relied on DOL Regulations and Guidance in April 2020 to
Determine Its Employees, Including Plaintiff, Were Exempt From The FFCRA
Paid Leave Entitlements Under the Health Care Provider Exemption.**

   *1.  The FFCRA.*

In response to the COVID-19 pandemic, the FFCRA was signed into law on March 18,

2020 and took effect April 1, 2020. The law includes two leave entitlements: (1) the Emergency

Paid Sick Leave Act ("**EPSLA**"); and (2) the Emergency Family and Medical Leave Expansion

Act ("**EFMLEA**"). Pub. L. No. 116-127, 134 Stat. 178 (Mar. 18, 2020). Only the EPSLA is at

issue here, as Plaintiff has not alleged a denial of EFMLEA leave. Ex. M, Pl. Compl.

Section 5102 of the EPSLA provides in pertinent part:

   (a) IN GENERAL.—An employer shall provide to each employee
employed by the employer paid sick time to the extent that the employee is unable
to work (or telework) due to a need for leave because:

   (1) The employee is subject to a Federal, State, or local quarantine or
isolation order related to COVID-19.
   (2) The employee has been advised by a health care provider to self-
quarantine due to concerns related to COVID-19.
   (3) The employee is experiencing symptoms of COVID-19 and seeking a
medical diagnosis.
   (4) The employee is caring for an individual who is subject to an order as
described in subparagraph (1) or has been advised as described in paragraph (2).
   (5) The employee is caring for a son or daughter of such employee if the
school or place of care of the son or daughter has been closed, or the child care
provider of such son or daughter is unavailable, due to COVID-19 precautions.
   (6) The employee is experiencing any other substantially similar condition
specified by the Secretary of Health and Human Services in consultation with the
Secretary of the Treasury and the Secretary of Labor.

FFCRA, P.L. 116-127, § 5102(a), 134 Stat. 178 (2020). Eligible full-time employees are entitled to up to eighty (80) hours of emergency paid sick leave ("**EPSL**"). FFCRA § 5102(b)(2)(A).

Under Section 5104 of the FFCRA, it is unlawful for an employer to "discharge, discipline, or in any other manner discriminate against any employee who--(1) takes leave in accordance with [the EPSLA]; and (2) has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act (including a proceeding that seeks enforcement of this Act), or has testified or is about to testify in any such proceeding." *Id.* at § 5104 (emphasis added).

The FFCRA does not contain its own enforcement mechanism, but rather relies on the FLSA. Specifically, an employer "who violates section 5102 [of the EPSLA] shall . . . be considered to have **failed to pay minimum wages** in violation of section 6 of the [FLSA] . . ." and "be subject to the penalties described in sections 16 and 17 of such Act [the FLSA] with respect to such violation." *Id.* at § 5105 (emphasis added). Further, "[a]n employer who willfully violates section 5104 [of the EPSLA] shall . . . be considered to be in violation of section 15(a)(3) of the [FLSA]" and "be subject to the penalties described in sections 16 and 17 of [the FLSA] with respect to such violation." *Id.*

The fact that violations of the EPSLA constitute a failure "to pay minimum wages" under the FLSA is what triggers PATHS' ability to raise the good faith defense under Section 259 of the Portal-to-Portal Act, as detailed below.

> 2. *The April 1, 2020 DOL regulations and guidance broadly defined the health care provider exemption to include employees of employers who merely contract with health care providers, such as PATHS.*

The FFCRA contains an exemption from its leave entitlements for employees who are "health care providers." Specifically, "an employer of an employee who is a health care

provider or an emergency responder may elect to exclude such employee from" the paid leave entitlement of the EPSLA.  FFCRA § 5102. The FFCRA also empowers the Secretary of Labor to promulgate regulations "to exclude certain health care providers and emergency responders from the definition of employee under section 5110(1) including by allowing the employer of such health care providers and emergency responders to opt out." *Id.* at § 5111.

Following the enactment of the FFCRA, the DOL took a broad approach to the definition of a health care provider for purposes of the exemption. Specifically, on April 1, 2020, the DOL, through its Wage and Hour Division ("**WHD**"), promulgated regulations on, *inter alia*, the health care provider exemption, which defined it to cover essentially any employee associated with the health care industry. The April 1 regulations provided in pertinent part:

> (i) For the purposes of this definition Employees who may be exempted from Paid Sick Leave or Expanded Family and Medical Leave by their Employer under the FFCRA, a health care provider is anyone employed at any doctor's office, hospital, health care center, clinic, post-secondary educational institution offering health care instruction, medical school, local health department or agency, nursing facility, retirement facility, nursing home, home health care provider, any facility that performs laboratory or medical testing, pharmacy, or any similar institution, Employer, or entity. This includes any permanent or temporary institution, facility, location, or site where medical services are provided that are similar to such institutions.
>
> (ii) **This definition includes any individual employed by an entity that contracts with any of these institutions described above to provide services** or to maintain the operation of the facility where that individual's services support the operation of the facility . . . . .

85 Fed. Reg. 19326 at § 826.30(c) (Apr. 6, 2020) (emphasis added). The regulations became operational on April 1, 2020 and effective on April 2, 2020. 85 Fed. Reg. 19326.

Closely preceding the issuance of its regulations, on March 30, 2020, the WHD published the following guidance on the FFCRA "frequently asked questions" section to its website, which also broadly defined the health care provider exemption:

122154888_4

**56. Who is a "health care provider" who may be excluded by their employer from paid sick leave and/or expanded family and medical leave?**

For the purposes of employees who may be exempted from paid sick leave or expanded family and medical leave by their employer under the FFCRA, a health care provider is anyone employed at any doctor's office, hospital, health care center, clinic, post-secondary educational institution offering health care instruction, medical school, local health department or agency, nursing facility, retirement facility, nursing home, home health care provider, any facility that performs laboratory or medical testing, pharmacy, or any similar institution, employer, or entity. This includes any permanent or temporary institution, facility, location, or site where medical services are provided that are similar to such institutions.

*This definition includes any individual employed by an entity that contracts with any of the above institutions, employers, or entities institutions to provide services* or to maintain the operation of the facility. This also includes anyone employed by any entity that provides medical services, produces medical products, or is otherwise involved in the making of COVID-19 related medical equipment, tests, drugs, vaccines, diagnostic vehicles, or treatments. . . . .

https://web.archive.org/web/20200330142446/https://www.dol.gov/agencies/whd/pandemic/ffcra

-questions (version of the guidance posted on the Wage and Hour Division Website on March

30, 2020) (emphasis added).[1]

---

[1] The cited website is from the "Internet Archive Wayback Machine," which "is a website which allows users to type in an Internet web address and see the page as it existed in various times in the past." *Syncsort Inc. v. Innovative Routines Int'l, Inc.*, 2008 WL 1925304, at *5 (D.N.J. Apr. 30, 2008). This Court has admitted trial testimony relying on the Wayback Machine. *See Newborn Bros. Co. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 323 (D.N.J. 2020) (Hillman). Moreover, the Third Circuit and courts in this District have taken judicial notice of the Wayback Machine to determine the content of past versions of websites pursuant to Fed. R. Evid. 201. *See Perera v. Att'y Gen. U.S.*, 536 F. App'x 240, 242 (3d Cir. 2013) ("Through the use of the Internet Archive's 'Wayback Machine,' which allows users to browse versions of pages and documents as they existed at various points in history, we were able to determine that questions pertaining to applications for asylum have been a longstanding feature of the 'Repatriation' passport-application process."); *Williams v. Ying Zhou*, 2019 WL 1379876, at *4 (D.N.J. Mar. 27, 2019) (taking judicial notice of the Wayback Machine and finding "that the content of [a] website has been substantially consistent as far back as December 16, 2013"); Moreover, the Third Circuit has taken judicial notice of "information [that] is publicly available on government websites[.]" *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017).

122154888_4

The WHD then updated its guidance on the health care provider exemption on April 2, 2020, to mirror the language of the April 1 regulations:

**56. Who is a "health care provider" who may be excluded by their employer from paid sick leave and/or expanded family and medical leave?**

....

This definition includes any individual employed by an entity that contracts with any of these institutions described above to provide services or to maintain the operation of the facility where that individual's services support the operation of the facility . . . .

https://web.archive.org/web/20200402185858/https://www.dol.gov/agencies/whd/pandemic/ffcra-questions

Based on the foregoing, a reasonably prudent employer who contracts with hospitals or similar institutions to provide services, such as PATHS, who read the DOL's regulations and guidance on the health care provider exemption in April 2020, would have reached the conclusion that it applied to its employees.

3. *The SDNY holds that the DOL regulation regarding the health care provider exemption is invalid.*

On August 3, 2020, in *New York v. United States Department of Labor*, 466 F. Supp. 3d 1 (S.D.N.Y. 2020), the SDNY held that the DOL had exceeded its authority by promulgating a "vastly overbroad" definition of the health care provider exemption to the FFCRA leave entitlements that was contrary to the FCRA's "unambiguous terms" and vacated the definition. *Id.* at 14-15, 18.

The DOL did not appeal the SDNY decision. Nonetheless, the DOL's guidance on the health care provider exemption provided on the WHD's FFCRA website continued to include the broad "any individual employed by an entity that contracts with . . ." language through at least September 11, 2020.

122154888_4

https://web.archive.org/web/20200911043441/https://www.dol.gov/agencies/whd/pandemic/ffcra
-questions#56 (website as of September 11, 2020).

> 4. *PATHS relies in good faith on the DOL's broad regulations and guidance on the health care provider exemption to determine its employees are exempt.*

The Section 259 of the Portal-to-Portal Act "defense was established to protect employers from liability if they took certain actions in reliance on an interpretation of the law by a government agency, even if that interpretation later turned out to be wrong." *Keubel v. Black and Decker (U.S.) Inc.*, No. 08-cv-6020, 2009 WL 1401694, at *10 (W.D.N.Y. May 18, 2009). And that is exactly what PATHS did here: rely in good faith on DOL regulations and guidance regarding the health care provider exemption that were available in April 2020, even though the SDNY later held the regulations and guidance were wrong. Accordingly, notwithstanding the SDNY decision, Section 259 provides PATHS a complete defense to liability for Plaintiff's claims under the FFCRA through the FLSA.

> Section 259 provides in pertinent part:

> (a) In any action or proceeding based on any act or omission . . .no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages . . . under the [FLSA]. . . if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, **notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.**

> (b) the agency referred to in subsection (a) shall be . . . in the case of the [FLSA]-the Administrator of the Wage and Hour Division of the Department of Labor . . .

29 U.S.C. § 259 (emphasis added).

"The Congressional purposes behind the Portal to Portal Act are stated in its first section." *Marshall v. Baptist Hosp., Inc.*, 668 F.2d 234, 237-38 (6th Cir. 1981). Specifically, Congress found that the FLSA had "been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers . . ." 29 U.S.C. § 251. "The language and legislative history of [the Portal-to-Portal Act] indicate that courts should be hesitant to impose retroactive . . . liability on employers in the face of an administrative interpretation which the employer could plausibly interpret as insulating him from liability." *Marshall*, 668 F.2d at 238. According to the late Justice Ginsburg, Section 251 provides an "affirmative defense that explicitly protects regulated parties from retroactive liability for actions taken in good-faith reliance on superseded agency guidance." *Encino Motors, LLC v. Navarro*, 138 S. Ct. 1134, 1147, 200 L. Ed. 2d 433, 447 (2018) (dissenting).

Courts will grant summary judgment based on a defendant's claim for a complete defense under Section 259 where the undisputed facts set forth the requisite elements. *See, e.g.*, *Frank v. McQuigg*, 950 F.2d 590 (9th Cir. 1991); *Keubel*, No. 08-cv-6020, 2009 WL 1401694; *Quinn v. NY State Elec & Gas Corp.*, 621 F. Supp. 1086, 1089 (N.D.N.Y. 1985).  This matter is, therefore, ripe for summary judgment, as PATHS is able to establish, through the undisputed facts, the three elements to succeed on a Section 259 defense: "(1) that its action was taken in reliance on a DOL ruling, interpretation, administrative practice or enforcement policy (2) that it was in conformity with that ruling, interpretation, administrative practice or enforcement policy, and (3) that its actions were in good faith." *EEOC v. Home Ins. Co.*, 672 F.2d 252, 263 (2nd Cir. 1982); *see also Henchy v. City of Absecon*, 148 F. Supp. 2d 435, 442 (D.N.J. 2001).

122154888_4

      a.  Element 1: PATHS relied on the DOL's operative regulations and guidance
          on the health care provider exemption when it determined that Plaintiff was
          <u>exempt from the EPSLA in April 2020.</u>

An employer may establish a Section 259 defense based on, among other forms of guidance from the DOL, a "regulation," "interpretation,""administrative practice," or "enforcement policy." 29 U.S.C. § 259(a). The term regulation refers to the "'great variety of authoritative rules issued pursuant to statute by an administrative agency, which have the binding effect of law.'" 29 C.F.R. § 790.17(b). An "interpretation" includes "bulletins, releases, and other statements issued by an agency which indicate its interpretation of the provisions of a statute," 9 C.F.R. § 790.17(c), while the phrase "administrative practice or enforcement policy," refers to less formal "courses of conduct or policies" that the DOL "has determined to follow in the administration and enforcement of a statute, either generally, or with respect to specific classes of situations[,]" 29 C.F.R. § 790.18(a).

In *Frank*, *supra*, employees brought an action against the Postal Service, alleging that the Postal Service's formula for computing overtime pay violated the FLSA. *Frank*, 950 F.2d at 590. Prior to the lawsuit, a May 13, 1983 opinion letter from the DOL's Wage and Hour Administrator endorsed the Postal Service's methodology. *Id.* at 593-94. On April 30, 1987, the district court ordered partial summary judgment in favor of the employees, holding that "the methodology in the Administrator's Opinion Letter 'directly contravenes the requirements of section 207(a)(1) of [the FLSA].'" *Id.* at 594. The Postal Service then raised a Section 259 defense, arguing that it relied in good faith on the DOL's regulations and the 1983 opinion letter in calculating overtime pay. *Id.* The district court disagreed, but the Ninth Circuit reversed. The Ninth Circuit determined there was no genuine dispute of fact that the Postal Service relied on the opinion letter, as the employees failed to offer any persuasive rationale to dispute reliance. *Id.*

at 598. Further, the Postal Service acted in good faith because the opinion letter endorsed their specific overtime formula. *Id.* at 598-99. Accordingly, the Ninth Circuit held that "[t]he postal service is protected from any back pay liability to April 30, 1987, the time of the district court's order invalidating the Opinion Letter and finding liability under [the FLSA]." *Id.* at 599 (citing 29 U.S.C. § 259(a)).

Similarly, in *Quinn*, the plaintiff brought claims against his employer under the Age Discrimination in Employment Act ("ADEA") based on his employer's training program that allegedly established a "practice and policy of discrimination based on age in the selection of employees for positions. . ." *Quinn*, 621 F. Supp. at 1086. The employer argued that its training program was exempt "from the provisions of the ADEA by . . . regulation 29 C.F.R. 1625.13." *Id.* On August 17, 1983, the Court held that while the employer's program complied with 29 C.F.R. 1625.13, "the regulation conflicts with the language and intent of the ADEA and should not be given effect" and denied the employer's first motion for summary judgment. *Id.* at 1088. Thereafter, the employer raised the Section 259 defense and again moved for summary judgment, arguing that "it was acting in good faith reliance on 29 C.F.R. 1625.13 . . ." *Id.*

The *Quinn* court granted the motion, holding that the employer established all three elements of the Section 259 defense. First, the employer established reliance through affidavit and deposition testimony from the person in charge of ensuring the training program complied with applicable regulations. *Id.* at 1090. The affidavit and testimony set forth that the employer was aware of 29 C.F.R. 1625.13 and ensured its "program complied with the requirements of the regulation by looking into the regulation itself." *Id.* Thus, the court determined that "[i]t was perfectly reasonable conduct on the part of the defendant to assume the validity of the regulation until it was actually rescinded" and "[w]hen neither the agency charged with enforcing the

regulation nor any court had concluded that the regulation was invalid, the defendant could hardly have been expected to reach such a conclusion on its own." *Id.* at 1091. The court also found the employer established the second element because the program conformed to the regulation. *Id.* at 1091. Finally, as for the third element, the court found no evidence to lead to any other conclusion than that "the defendant acted in good faith in relying on the regulation." *Id.*; *see also Keubel*, 2009 WL 1401694 at *11 (granting summary judgment in the employer's favor based on a Section 259 defense where the the employer consulted with Labor Counsel for legal advice as to the proper compensation practice for Commute time, who "reviewed and relied upon the FLSA and its implementing regulations and DOL opinion letters, including the January 1999 opinion letter in providing advice to [the employer]"); *Kenney v. Wigton-Abbbot Corp.*, 80 F. Supp. 489, 495-96 (D.N.J. 1948) (holding that Section 259 barred the plaintiff's claims under the FLSA based on evidence that the defendants relied in good faith on a circular letter from an administrative agency which "contained instructions for payment of compensation for employment in excess of the normal work week").

Here, as in *Frank, Quinn*, and *Keubel*, the undisputed facts objectively establish that PATHS relied on the DOL regulations and guidance regarding the health care provider exemption in April 2020. The guidance constitutes an "interpretation," "administrative practice," or "enforcement policy" under Section 259, while the regulation is clearly a "regulation." Following the passage of the FFCRA on March 26, 2020, PATHS was set to allow its employees to take FFCRA leave under both the EPSLA and EFMLEA. SUMF at ¶¶ 22-29. That only changed when the DOL issued its regulations and guidance on April 1, 2020 on the health care provider exemption. SUMF at ¶¶ 30-38. PATHS discovered that the DOL regulations and guidance took a broad view that the health care provider exemption covered entities that merely

122154888_4

"contracted with" institutions such as hospitals and doctors' offices to "provide services." SUMF at ¶ 30. PATHS's HR Director reviewed these regulations and guidance (the FAQ section on WHD website) and discussed them with PATHS's CEO, Anthony Mackiewicz. SUMF at ¶¶ 30-32. In reliance on these regulations and guidance, they determined that because PATHS is a medical billing company that contracts with hospitals and other medical facilities, PATHS' employees fell within the health care provider exemption as broadly defined by the DOL's regulations and guidance. SUMF at ¶ 32

PATHS' reliance on the DOL guidance and regulations is objectively corroborated by an email from Ms. Rossano to Mr. Mackiewicz on April 2, 2020, confirming their conversation where she provides a link to the WHD website. SUMF at ¶ 33. Therein, she "copied and pasted" language from the DOL website on the health care provider exemption. SUMF at ¶¶ 33-34. Ms. Rossano and, in turn, PATHS, specifically relied on the health care provider exemption, as expressed in the April 2020 DOL regulations and guidance, when she informed Plaintiff on April 3, 2020 that PATHS had determined its employees, including him, were not eligible for FFCRA leave. SUMF at ¶ 30-38, 54-73. As in *Quinn* and *Keubel*, PATHS was entitled to rely on the April 2020 regulations and guidance until, at the earliest, August 3, 2020, when the SDNY issued the order invalidating the regulations.

Accordingly, PATHS has established the reliance element of its Section 259 defense.

      b.   Element 2: PATHS acted in conformity with the DOL's operative regulations and guidance on the health care provider exemption in April 2020.

Based on the undisputed facts, PATHS is clearly able to establish the second element of its Section 259 defense, as it acted in conformity with the April 2020 DOL Regulations and Guidance when it determined that its employees, including Plaintiff, fell within the definition of the health care provider exemption. *See Quinn*, 621 F. Supp. at 1091 (explaining that "[t]o

14

establish the second element of the Portal-to-Portal Act defense, the defendant must prove that the UC & M program was in conformity with the regulation").

On April 1, 2020, the DOL's definition of "health care provider," for purposes of the exemption, in its published regulations and guidance, included, "any individual employed by an entity that contracts with" hospitals and other medical facilities "to provide services or to maintain the operation of the facility where that individual's services support the operation of the facility." 85 Fed. Reg. 19326 at § 826.30(c) (Apr. 6, 2020). PATHS's employees, including Plaintiff, fell squarely within the scope of this definition. Specifically, PATHS is a company that contracts with medical and healthcare providers, such as hospitals, to provide, among other things, account receivable management (billing services).  SUMF at ¶¶ 1-6, 18-20, 24-26. As PATHS explained in a March 19, 2020 email to its employees, it was important to keep the business fully functioning during the pandemic, as it "financially supports the critical infrastructure of the medical community, [its] Hospital and Physician clients, at a time it is most important to keep them fully functioning." SUMF at ¶ 18. Plaintiff cannot dispute this fact, as he testified during his deposition that PATHS is a "medical billing business" that works with "hospitals[.]" SUMF at ¶ 1. Indeed, Plaintiff worked as a billing representative in the PATHS' Medicare Department, whose job duties included following up "with insurance companies, work[ing] with state offices, . . . run[ning] insurance eligibility, review[ing] claims and send[ing] re-bills if needed, appeals or re-determinations, mak[ing] adjustments in the hospital system as needed[.]" SUMF at ¶¶ 42, 45.

Based on the foregoing, PATHS' acted in conformity with the April 2020 DOL regulations and guidance when it determined its employees, including Plaintiff, fell under the

health care provider exemption to the FFCRA. Accordingly, PATHS has established the conformity element of its Section 259 defense.

       c.  Element 3: PATHS acted in good faith when it determined its employees, including Plaintiff, were exempt from EPSL/FFCRA leave because they fit <u>the criteria for the health care provider exemption in April 2020.</u>

There can be no genuine dispute regarding PATHS's good faith. "An employer establishes that it acted in good faith when it shows that it 'acted as a reasonably prudent man would have acted under the circumstances, [that] it have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry.'" *Quinn*, 621 F. Supp. at 1091 (quoting 29 C.F.R. 790.15(a)); *Keubel*, 2009 WL 1401694 at *11.

*Quinn* is again instructive on this issue. In that case, over the plaintiff's objection, the court held that the employer had established the good faith element of its Section 259 defense for purposes of summary judgment. 621 F. Supp. at 1091-92. Specifically, because the employer acted in conformity with the regulation upon which it relied, the court could not "conclude . . . that the defendant acted anything other than reasonably when it relied on the regulation" nor could the court find any basis upon which it could "conclude that the defendant did not have honesty of intention." *Id.* at 1091. Further, although the administrative agency had proposed rescinding the regulation at issue, the court could not find, as a matter of law, that the defendant "lacked good faith, because it chose to follow a regulation that was lawfully in effect at that time." *Id.* at 1092.

In *Kenney*, *supra*, all the court needed to conclude the defendants had established a Section 259 defense was evidence that showed a circular letter was communicated to the defendants, "the payrolls were checked to conform to the circular[,]" and that "[i]t appear[ed] that the ruling was complied with and relied upon, in good faith." *Kenney*, 80 F. Supp. at 496.

The evidence of PATHS' good faith in relying on the April 2020 regulations and guidance is undisputed and even stronger than the evidence proffered in *Quinn* and *Kenney*. First, as established above, PATHS acted in conformity with the regulations and guidance when it determined Plaintiff was exempt from the EPSLA, as its employees clearly fell within the health care provider exemption as expressed by the DOL at that time. SUMF at ¶¶ 1-6, 18-20, 24-26. Thus, in accord with *Quinn*, there is no reason to conclude that PATHS "acted anything other than reasonably when it relied on the regulation" or that PATHS "did not have honesty of intention." 621 F. Supp. at 1091-92.

Second, prior to the publication of the April 2020 regulations and guidance, PATHS did not believe that its employees fell within any FFCRA exemption and intended to allow qualified employees to take EPSL. SUMF at ¶¶ 27-29. Only after the DOL published the April 2020 regulations and guidance did PATHS determine that its employees, including Plaintiff, could be exempted from the EPSLA. SUMF at ¶¶ 27-29. As in *Quinn*, PATHS had no reason to believe the regulations and, in turn, the guidance would be invalidated by the SDNY in August 2020. SUMF at ¶¶ 109-10. After PATHS learned that the DOL updated its regulations and guidance in September 2020 to narrow the health care provider exemption, PATHS began to offer EPSL to all of its employees. SUMF at ¶¶ 111-12. Thereafter, thirty-nine (39) PATHS employees took EPSL without issue. SUMF at ¶¶ 113-14. These actions evince good faith.

In short, there is simply no evidence that PATHS lacked good faith when it relied on the April 2020 regulations and guidance to determine that its employees, including Plaintiff, were exempt from the EPSLA/FFCRA leave. Accordingly, PATHS has established the good faith element of its Section 529 defense.

Moreover, because there is no genuine dispute of material fact that PATHS has satisfied all three elements of its Section 529 defense, summary judgment should be granted in PATHS's favor on all of Plaintiff's claims. This includes Plaintiff's FFCRA retaliation claims, which would require Plaintiff to establish that PATHS *willfully* took an adverse employment action because he took EPSL or filed a complaint related to the FFCRA.  FFCRA, at § 5105. Specifically, because PATHS acted in good faith in determining that Plaintiff was exempt from leave under the EPSL, it could not have willfully taken any action against him for taking EPSL. *See* FFCRA at § 5104, 5105.[2]

### C. PATHS is Entitled to Summary Judgment on Plaintiff's FFCRA Retaliation Claim Because He Cannot Establish a Causal Link Between any Protected Activity and any Adverse Employment Action.

Plaintiff's FFCRA retaliation claim, along with all of his claims, should be dismissed based on PATHS's Section 259 defense. Nonetheless, PATHS is separately entitled to summary judgment on the retaliation claim, as Plaintiff cannot establish any of the requisite elements.

Claims for retaliation under the FFCRA/EPSLA are set forth in Section 5104 of the EPSLA, which makes it unlawful for an employer to "discharge, discipline, or in any other manner discriminate against any employee who--(1) takes leave in accordance with [the EPSLA]; and (2) has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act (including a proceeding that seeks enforcement of this Act), or has testified or is about to testify in any such proceeding." FFCRA at § 5104 (emphasis added). As

---

[2]It is anticipated that Plaintiff will cite *Beltran v. 2 Deer Park Drive Operations LLC*, 2021 WL 794745 (D.N.J. Feb. 28, 2021) and *Payne v. Woods Servs., Inc.*, 2021 WL 603725 (E.D. Pa. Feb. 16, 2021) to contest PATHS's ability to rely on the vacated April 1, 2020 health care provider definition. Those decisions, however, are inapplicable to the Section 259 defense raised by PATHS. First, the cases dealt with motions to dismiss, rather than summary judgment with a fully developed record.  The courts also do not reference the guidance on the DOL website.  Finally, the defendants did not raise the Section 259 defense on their motions to dismiss in those cases and, therefore, the issue of good faith reliance was not addressed by the courts.

detailed above, the FFCRA relies on the FLSA for enforcement, including claims for retaliation. FFCRA at § 5105. To be held liable for retaliation, the employer's violation of Section 5104 must be "willful." *Id.*

Courts review FLSA retaliation claims under the *McDonnell-Douglas* burden shifting framework. *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 850 (D.N.J. 2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, the plaintiff bears the initial burden to show "that: (1) [he] engaged in protected activity; (2) [he] suffered an adverse employment decision; and (3) the adverse decision was causally related to the protected activity." *Cunningham v. Heraeus Inc.*, 2020 WL 5253565, at *7 (D.N.J. Sept. 3, 2020). If the plaintiff meets his initial burden, the burden shifts to the employer to offer a legitimate, nonretaliatory reason for the adverse employment decision. *Harris v. Clean Harbors Env't Servs., Inc.*, 2019 WL 5446299, at *13 (D.N.J. Oct. 24, 2019). The burden then shifts back to the plaintiff to establish that the reason offered by the employer was pretextual. *Id.*

Plaintiff alleges in his Complaint that PATHS retaliated against him for requesting FFCRA leave by (i) refusing to allow him to work remotely, (ii) terminating his employment, and (iii) refusing to rehire him. But as detailed below, Plaintiff cannot establish that he engaged in protected activity under the FFCRA, let alone that the activity was causally related to any of these actions.

### 1. *Plaintiff did not engage in protected activity.*

To establish that he engaged in protected activity for his retaliation claim, Plaintiff would have to show that he engaged in the activity described in Section 5104 of the FFCRA—that he took leave in accordance with the EPSLA and that he filed a complaint or instituted a proceeding under the FLSA. Plaintiff cannot establish either because (i) there is no record evidence that he

requested any form of FFCRA leave, (ii) a request for FFCRA leave does not constitute protected activity, and (iii) he had not filed any proceeding during the relevant time period.

First, it is undisputed Plaintiff did not take EPSL. There is no record evidence that Plaintiff even requested EPSL or any type of FFCRA leave, which should end Plaintiff's retaliation claim before it begins. In *Reid-Falcone v. Luzerne Cty. Cmty. Coll.*, 2005 WL 1527792, at *8 (M.D. Pa. June 28, 2005), an FMLA case, the plaintiff "acknowledged that she never made any written application to the [employer] specifically requesting FMLA leave; that she was informed that she was taking leave under the college leave policy; and that it was her understanding that the college followed its own policy for leave."  Based on these facts, the court granted summary judgment to the employer on the plaintiff's retaliation claim because she could not "show that she invoked a right protected by the FMLA in the first instance . . . ." *Id.*; *see also Hill v. Underwood Mem'l Hosp.*, 365 F. Supp. 2d 602, 611 (D.N.J. 2005) (holding that the Plaintiff's "leave, commencing in May, 2001, was not FMLA leave, and thus cannot serve as a basis for a [retaliation] claim under the FMLA").

Here, Plaintiff provided PATHS's HR Director, Ms. Rossano, a note from a physician on March 31, which advised him to self-isolate. SUMF at ¶¶ 62-66. Plaintiff then spoke with Ms. Rossano on April 3, 2020 regarding his options (the "**April 3 call**"). SUMF at ¶¶ 67-69. Similar to the plaintiff in *Reid-Falcone*, Plaintiff testified that he does not exactly recall what they spoke about, but "believed it was [his] personal accumulated sick time [he] was using" and does not "remember talking about [leave] under the new federal law"—*i.e.*, the FFCRA. SUMF at ¶¶ 70-71. While Plaintiff recalls inquiring about the FFCRA to someone at PATHS at some point, he does not remember when, how, or to whom he inquired. SUMF at ¶ 72. Thus, Plaintiff's

retaliation claim fails because he cannot show that he invoked a protected right under the FFCRA.

Moreover, even if Plaintiff had requested or attempted to take EPSL/FFCRA leave, his retaliation claim still fails, as an employee does not engage in protected activity under the FFCRA unless he actually takes EPSL or files a complaint. When confronted with this very issue, the court in *Colombe v. SGN, Inc*, No. 5:20-cv-374-REW, 2021 WL 1198304, at *5 (E.D. Ky. Mar. 29, 2021) determined that the FFCRA's anti-retaliation provisions do not apply to mere attempts to take EPSL. Specifically, the court held that "unlike, e.g., the FMLA anti-retaliation statute, FFCRA does not extend to requests for or attempts at leave. The FMLA broadly guards against interference with 'the attempt to exercise' a right to leave. 29 U.S.C. § 2615(a)(1). The FFCRA protects only an employee "who—takes leave in accordance with this Act." § 5104, 134 Stat. at 197." *Id.* As such, the court dismissed the plaintiff's FFCRA retaliation claim, with prejudice. *Id.* In accord with *Colombe*, because it is undisputed Plaintiff did not actually take EPSL, he did not engage in protected activity, as a matter of law.

Further, it is undisputed that the only complaint or proceeding he filed or instituted is when he initiated this matter on May 21, 2020—after the alleged retaliation occurred in April 2020. Nor is there record of Plaintiff making an internal or informal complaint to PATHS regarding a denial of EPSL or anything related to the FFCRA.

Accordingly, PATHS is entitled to summary judgment on Plaintiff's FFCRA retaliation claim given that Plaintiff did not engage in protected activity.

> 2. *Even if Plaintiff engaged in protected activity under the FFCRA, such activity is not causally connected to any adverse employment action.*

Even if the Court accepts the factually unsupported allegation in the Complaint that Plaintiff requested EPSL/FFCRA leave during the April 3 call and that the request constitutes protected activity, Plaintiff still cannot prevail on his retaliation claim.

Initially, the allegations of retaliation are contradicted by Plaintiff's deposition testimony, where he admitted that he does not even believe PATHS took retaliatory action against him for requesting leave under the FFCRA. SUMF at ¶¶ 105. Based on this testimony alone, the Court can end its inquiry and dismiss Plaintiff's retaliation claim.

If the Court proceeds with its review, Plaintiff still cannot establish a causal link between any alleged adverse action and the April 3 call. Conduct does not constitute a materially adverse action sufficient to be actionable under the FLSA unless "the conduct alters the 'employee's compensation, terms, conditions or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Goins v. Newark Hous. Auth.*, 2019 WL 1417850, at *15 (D.N.J. Mar. 29, 2019) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301 (3d Cir. 1997)). Further, a plaintiff cannot establish a causal connection between the alleged protected activity and adverse employment action absent direct evidence or "circumstantial evidence, such as temporal proximity, a pattern of antagonism, and pretext." *Kachmar v. SunGard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997).

As set forth below, Plaintiff cannot establish a causal link between any protected activity and any of the adverse employment actions alleged in the Complaint: (i) refusal to allow him to work remotely, (ii) termination of employment, and (iii) purported refusal to rehire. Ex. M at ¶ 45.

a.  Remote Work

Plaintiff cannot establish a causal link between the April 3 call and the denial of his request to work remotely because (i) denial of remote work is not an adverse employment action, (ii) the decisions on remote work were made before April 3, 2020, (iii) the decision that Plaintiff could not work remotely was made by Anna Martz, who did not know whether Plaintiff requested EPSL/FFCRA leave, and (iv) Plaintiff was not eligible for remote work.

Initially, PATHS' refusal to allow Plaintiff to work remotely does not constitute an adverse employment action, as courts have "repeatedly held that denial of a request to telework on its own does not constitute an adverse employment action." *Brown v. Jewell*, 134 F. Supp. 3d 170, 181 (D.D.C. 2015) (collecting cases). This includes *Robinson v. Horizon Blue Cross Blue Shield of New Jersey*, No. CIV.A. 12-2981, 2015 WL 4603647, at *5 (D.N.J. July 30, 2015), aff'd, 674 F. App'x 174 (3d Cir. 2017), where Judge Arleo held, in the Title VII context, "the denial of Plaintiff's request to work from home is not an adverse employment action."

Even if the decision on remote work could constitute an adverse employment action, any argument that it was causally related to anything said on April 3, 2020 is belied by the fact that decisions on remote work were made in March 2020, which is *before* the purported request for leave was made and even before the FFCRA took effect on April 1, 2020. SUMF at ¶ 53; *see PBA Loc. 183 v. Cty. of Essex*, 2019 WL 5168688, at *10 (D.N.J. Oct. 15, 2019) ("In order to plead a colorable retaliation claim under the FLSA, the Complaint must plead factual allegations establishing that the employer engaged in an adverse action '***either after or contemporaneous*** with the employee's protected activity.'").

Additionally, remote work decisions relating to Plaintiff were made by Anna Martz, who had no idea whether Plaintiff requested any form of FFCRA leave. SUMF at ¶¶ 47, 77, 90 108.

In *Harris v. Clean Harbors Env't Servs., Inc.*, this Court held that "a decisionmaker must be aware of a plaintiff's engagement in protected activity for a retaliation claim to be cognizable." 2019 WL 5446299, at *13 (D.N.J. Oct. 24, 2019) (Hillman). Ms. Martz cannot grant or deny employees leave and no employee has ever approached her to request leave, nor did Ms. Rossano communicate with Ms. Martz regarding Plaintiff's ability to take paid or unpaid leave in April 2020 due to quarantine. SUMF at ¶¶ 10-11, 77. Indeed, Ms. Martz was unaware whether Plaintiff received paid leave under the FFCRA. SUMF at ¶ 108. In accord with *Harris*, because Ms. Martz was unaware of any request for EPSL/FFCRA leave by Plaintiff, there can be no causal connection between the denial of his request for remote work and his request for leave. *See also Preobrazhenskaya v. Mercy Hall Infirmary*, 71 F. App'x 936, 939 (3d Cir. 2003) (affirming dismissal of FLSA retaliation claim where the decision maker "provided a verification stating that she was solely responsible for the decision to terminate [the plaintiff] and that at that time she was unaware that [the plaintiff] had contacted the Department of Labor").

Finally, the decision on remote work was made for a reason wholly unrelated to any purported request by Plaintiff for FFCRA leave. Because Plaintiff had been with PATHS for less than a year, Ms. Martz, who was the director of Plaintiff's department, did not believe he had sufficient experience to work remotely. SUMF at ¶¶ 39, 50-51. Not a single employee in Plaintiff's department with less than two years of experience was permitted to work remotely, with no exceptions. SUMF at ¶52. Further, if it had previously been determined that an employee could not work remotely because of experience, Ms. Martz would not later reconsider the decision, regardless of whether the employee had COVID-19 concerns or provided medical documentation, as "[t]hey needed supervision. They were new to the process and needed training and guidance." SUMF at ¶ 53.

24

Accordingly, there is no causal relationship between the April 3 call (and any purported protected activity under the FFCRA) and the decision that Plaintiff could not work remotely.

### b. Termination

Plaintiff cannot establish a causal link between the April 3 call and the termination of his employment (an "involuntary layoff") on April 22, 2020 because (i) Plaintiff's request to work remotely for more than a month is an intervening event which severs any causal link, (ii) PATHS invited Plaintiff to return to work multiple times and provided him with leave longer than what is required under the EPSLA, (iii) the temporal proximity is not unusually suggestive, (iv) Anna Martz, who did not know whether Plaintiff had requested FFCRA leave, was the primary decision maker, and (v) plaintiff made no complaints regarding leave.

First, as explained in *Harris*, some courts have found that "evidence of intervening events tend to undermine any inference of retaliatory motive and weaken the causal link." 2019 WL 5446299, at *13. Here, the letter from Plaintiff's physician and accompanying request to work remotely until June 1, 2020 (more than a month) is such an intervening event that severs any causal link between the April 3 call and Plaintiff's termination. SUMF at ¶¶ 87-92. Clearly, this request is what led to Plaintiff termination, as it had already been determined that Plaintiff could not work remotely due to his lack of experience.  Importantly, the FFCRA does not require employers to provide a remote work option for employees experiencing COVID symptoms.  In fact, employees cannot take EPSL if they are able to work remotely.  *See* FFCRA 5102 ("[a]n employer shall provide to each employee employed by the employer paid sick time to the extent that the employee is unable to work *(or telework)* . . . .) (emphasis added).

Second, before Plaintiff requested to work remotely until June, PATHS invited Plaintiff to return to work multiple times:

122154888_4

- On April 9, 2020, Plaintiff provided PATHS with a doctor's note indicating he could return to work on April 16, 202 Ms. Rossano told him that they would see him on "Thursday the 16th." SUMF at ¶¶ 78-80.

- On April 20, 2020, after receipt of Plaintiff's doctor's note indicating that he did not have COVID and could return to work in two (2) days, Ms. Rossano advised him that he was expected to return to work "expected to return to work on Thursday[,]" April 23, 2020. Plaintiff responded, "Okkk! Thank you! SUMF at ¶¶ 81-86.

- On April 22, 2020, after Plaintiff advised Ms. Rossano that his doctor recommended that he ask about remote work options, Ms. Rossano responded by advising Plaintiff he could return to work—specifically that his "position does not allow [a] work from home option" and his "choice at this point would be to *return tomorrow* at [his] full time in office status or take a voluntary lay off due to [his] COVID concerns." SUMF at ¶¶ 88-89 (emphasis added).

The numerous invitations to return to work prior to Plaintiff's termination militate against any inference of retaliatory motive by PATHS. If PATHS wanted to terminate Plaintiff because he inquired about FFCRA leave, it is simply nonsensical PATHS would have invited him to return to work several times beforehand.

Third, even though PATHS determined that Plaintiff and his colleagues were exempt from the EPSLA, they still provided him with a leave of absence. Indeed, he was provided with *more* leave time than required under the EPSLA. PATHS gave Plaintiff a leave of absence of twenty-three (23) *days* (April 1 through April 24, 2020) before he was terminated—longer than the eighty (80) hours provided for under the EPSLA. SUMF at ¶¶ 96, 104. It belies common sense that if PATHS held any retaliatory animus toward Plaintiff based on the April 3 call that PATHS would grant him an extended leave of absence longer than what he would be entitled to under the EPSLA. Further undermining any inference of retaliatory motive is the fact that Plaintiff was given the opportunity to reapply for employment. SUMF at ¶ 97.

Fourth, the temporal proximity in this case is not so "unusually suggestive" to support a causal nexus in and of itself—especially given the issues discussed above. Indeed, the Third Circuit has generally held that mere temporal proximity alone is insufficient to establish a causal

nexus. *See, e.g., Escanio v. United Parcel Serv.*, 538 F. App'x 195, 200 (3d Cir. 2013) (14 days between protected activity and termination insufficient); *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (3 weeks between complaint and termination insufficient).  The twenty-two (22) day gap between Plaintiff's purported April 3 request for EPSL/FFCRA leave and his termination on April 24, 2020 is similar to the time periods that the Third Circuit deemed insufficient in *Escanio* and *Thomas* and is, therefore, insufficient by itself to support the necessary causal link.

Fifth, Anna Martz was the primary decision maker on Plaintiff's termination. As established above with respect to the remote work decision, Ms. Martz was unaware of whether Plaintiff requested or was granted any form of FFCRA leave. SUMF at ¶¶ 77, 108. Accordingly, Plaintiff cannot establish a link between his termination and the alleged protected activity about which Ms. Martz was unaware. *See Harris*, 2019 WL 5446299, at *13

Finally, PATHS believed that Plaintiff was exempt from the FFCRA under the health care provider exemption. Plaintiff does not allege that he complained about the denial of EPSL. If PATHS did not believe Plaintiff was entitled to EPSL there is no logical reason that they would retaliate against Plaintiff for simply requesting it.

Accordingly, there is no causal relationship between the April 3 call (and any purported protected activity under the FFCRA) and the decision to terminate Plaintiff.

          c.   <u>Rehire</u>

Plaintiff cannot establish a causal connection between any purported April 3, 2020 request for EPSL/FFCRA leave and the fact he was not rehired because (i) PATHS invited him to return to work multiple times before his termination, (ii) Plaintiff did not follow directions on

how to reapply, (iii) Ms. Martz was unaware whether Plaintiff attempted to reapply, and (iv) the temporal proximity is not unusually suggestive.

First, as addressed above, PATHS's invitation to Plaintiff to return to work multiple times before his termination on April 24, 2020. This belies any alleged causal link between any protected activity by Plaintiff during the April 3 call and PATHS not rehiring Plaintiff.

Second, Ms. Rossano directed Plaintiff to reach out to *management* for reemployment opportunities, which Plaintiff failed to do. SUMF at ¶¶ 97-101. Indeed, the only effort made by Plaintiff for reemployment was a text message to Ms. Rossano on April 27, 2020. He failed to contact his director, Ms. Martz, or his supervisor, Tina Smith-Watkins—even though his mother is friends with Ms. Smith-Watkins and he got his job through her. SUMF at ¶¶ 40, 100-01. In *Murray v. Beverage Distribution Ctr.*, 533 F. App'x 98, 102-03 (3d Cir. 2013), the Third Circuit affirmed the dismissal of a failure to hire claim under the New Jersey Law Against Discrimination where the plaintiff failed to follow the employer's application process. As in *Murray*, Plaintiff's failure to follow the directions to inquire about reemployment defeats his retaliation claim.

Third, Ms. Martz, who is responsible for hiring decisions in the Medicare Department, did not know whether Plaintiff inquired about reemployment. SUMF ¶¶ 2-7, 41, 108. In *McGorrian v. E.M.S.A.*, 85 F. App'x 1, 4 (3d Cir. 2003), the Third Circuit affirmed the dismissal of a failure to rehire claim under Title VII, where the individual responsible for hiring was unaware of the plaintiff's job application. In accord with *McGorrian*, Plaintiff cannot establish a causal link between any protected activity and the fact he was not rehired, as Ms. Martz was unaware whether Plaintiff attempted to reapply (nor did he actually reapply).

122154888_4

Finally, even if Plaintiff's text message to Ms. Rossano on April 27 could constitute a proper application for rehire, as with the termination, the temporal proximity with the April 3 call is not so unusually suggestive to establish a causal link. *See Escanio*, 538 F. App'x at 200.

Accordingly, there is no causal relationship between the April 3 call (and any purported protected activity under the FFCRA) and the decision to terminate Plaintiff.

> 3. *Even if Plaintiff were able to establish a prima facie case of retaliation, PATHS had legitimate non-retaliatory reasons for the decisions it made and Plaintiff will be unable to establish pretext.*

An FFCRA/FLSA retaliation claim does not survive summary judgment even if the plaintiff establishes a *prima facie* case. Rather, the burden shifts to the employer to state a legitimate, non-retaliatory reason for the adverse employment action. *Harris*, 2019 WL 5446299, at *13. The burden then shifts back to the plaintiff, who "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir. 1994) (internal citations and quotations omitted). Here, PATHS has legitimate, non-retaliatory reasons for all of its actions in this case for which Plaintiff will be unable to establish pretext.

The legitimate, non-retaliatory basis for the remote leave decision is that Plaintiff lacked sufficient experience to work remotely. SUMF at ¶ 51; *see Shahin v. Delaware*, 531 F. App'x 200, 203 (3d Cir. 2013) (holding that a lack of experience was a legitimate, nondiscriminatory reason for not hiring the plaintiff). This is corroborated by the fact that no other employee in his department with the same level of experience was permitted to work remotely. SUMF at ¶ 52. Any argument by Plaintiff regarding his belief that he could have worked remotely fails, as there

29

is hardly a more well-settled holding in retaliation or discrimination law than the legal irrelevance of whether the employer's decision was "wrong or mistaken." *See Fuentes*, 32 F.3d at 765 (explaining that "since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent").

The legitimate, non-retaliatory basis for Plaintiff's termination is that remote work was not an option and PATHS could not hold Plaintiff's position for over a month given that he had already been absent for a month. SUMF at ¶¶ 88-96.

The legitimate, non-retaliatory basis for not rehiring plaintiff is that he did not contact management as directed or reapply for a position. Moreover, Ms. Martz did not consider personally contacting Plaintiff about returning to work after April 24, 2020 (not that she had an obligation to do so) because "she didn't have enough work." SUMF at ¶ 107. To date, PATHS has not hired anyone to fill Plaintiff's vacant position. SUMF at ¶ 106. Thus, even if Plaintiff had properly inquired about reemployment, there would not have been enough work for him. *See Yandrisevitz v. H.T. Lyons, Inc.*, 2009 WL 2195139, at *10 (E.D. Pa. July 22, 2009) (holding that a lack of work was a legitimate reason for not restoring the plaintiff to her position).

Finally, any allegation of pretext is defeated by the fact that once the DOL changed its regulations and guidance on the health care provider exemption, PATHS began to offer FFCRA leave/EPSL to its employees. SUMF at ¶¶ 109-113. Thirty-nine (39) PATHS employees took FFCRA leave and all of them returned to work following their leave. SUMF at ¶¶ 109-115. This includes a billing representative in Plaintiff's former department. SUMF at ¶¶ 114.

Accordingly, even if Plaintiff could state a prima facie case for retaliation, PATHS would still be entitled to summary judgment, as he has no evidence that the legitimate non-retaliatory reasons for the actions taken by PATHS were pretext.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, PATHS' Motion for Summary Judgment should be granted and all of Plaintiff's claims should be dismissed with prejudice.

Dated:  April 15, 2021                                Respectfully submitted,

                                                               **DILWORTH PAXSON LLP**

                                                               By: */s/ Benjamin S. Teris*
                                                                     Nicholas M. Donzuso
                                                                     Benjamin S. Teris

                                                                     457 Haddonfield Road, Suite 700
                                                                     Cherry Hill, New Jersey, 08002
                                                                     (856) 675-1940
                                                                     (856) 663-8855 (facsimile)
                                                                     ndonzuso@dilworthlaw.com
                                                                     bteris@dilworthlaw.com

                                                                     *Attorneys for Defendant Physician and*
                                                                     *Tactical Healthcare Services, LLC*

31